**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
5900 Wilshire Blvd., Suite 920
Los Angeles, California 90036
Tel: (323) 937-9900
Fax: (323) 937-9910

**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees
(additional counsel for Plaintiffs listed
on following page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIO GONZALEZ, MATIAS MADERA, ORALIA BANDA, as individuals and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL ALLOY CORPORATION, a California Corporation, and DOES 1 through 10, <br><br> Defendants. | Case No.  SACV 13-00807 JVS (MRWx) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge:  Hon. James V. Selna <br> Date:   June 16, 2014 <br> Time:   1:30 p.m. <br> Dept.:  10C |

1

**GRAHAM HOLLIS APC**
Graham S.P. Hollis (SBN 120577)
Email: ghollis@grahamhollis.com
Kristina A. De La Rosa (SBN 279821)
Email: kdelarosa@grahamhollis.com
3555 Fifth Avenue
San Diego, California 92103
Tel: (619) 692-0800
Fax: (619) 692-0822

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

NOTICE IS HEREBY GIVEN that on June 16, 2014, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701-4516, before the Honorable James V. Selna, Plaintiffs Fabio Gonzalez, Matias Madera and Oralia Banda ("Plaintiffs") as individuals and on behalf of all others similarly situated, will and hereby do move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying the proposed California Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Preliminarily certifying the FLSA Settlement Class for settlement purposes under the Fair Labor Standards Act ("FLSA");

3. Preliminarily appointing Plaintiffs as Class Representatives for settlement purposes;

4. Preliminarily appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP, Paul K. Haines of Boren, Osher & Luftman LLP, and Graham S.P. Hollis and Kristina A. De La Rosa of Graham Hollis APC as Class Counsel for settlement purposes;

5. Preliminarily approving the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Joint Stipulation ("Settlement Agreement");

6. Scheduling a final fairness hearing to consider final approval of the Settlement Agreement, entry of a proposed final judgment, Plaintiffs' counsel's Motion for Reasonable Attorney's Fees and Costs, and counsel's Motion for the Class Representatives' Incentive Payments;

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

7. Appointing CPT Group, Inc., as the third-party settlement administrator for mailing notices; and

8. Approving the proposed Class Notice, proposed Claim Form, and proposed Request for Exclusion Form, and an order that they be disseminated to the proposed Settlement Classes as provided in the Settlement Agreement.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Paul K. Haines, Hernaldo J. Baltodano, and Graham S.P. Hollis and exhibits attached thereto, the declaration of Julie Green and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.


Dated:  May 16, 2014

Respectfully submitted,

BOREN, OSHER & LUFTMAN LLP


By:   __/s/ Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Classes and
Aggrieved Employees

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................1

II. FACTUAL SUMMARY ........................................................3

    A. Plaintiffs' Claims .........................................................3

    B. Defendant Denies Plaintiffs' Claims ...........................5

    C. Procedural History And Discovery Completed .............6

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.......................8

    A. The Settlement Is Fair, Adequate, and Reasonable ..................................8

        1. The Strength of Plaintiffs' Case ..............................9

        2. Risk, Expense, Complexity, and Duration of Further Litigation ...11

        3. Risk of Maintaining Class Action Status .......................11

        4. Amount Offered in Settlement Given Realistic Value of Claims..12

        5. Discovery Completed and the Status of Proceedings ...................17

        6. The Experience and Views of Counsel ........................17

    B. The Preliminary Approval Standard Is Met...........................18

        1. The Settlement is Within the Range of Possible Approval............18

        2. The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations .......................................................19

        3. The Settlement is Devoid of Obvious Deficiencies ......................20

IV. THE SETTLEMENT MERITS CERTIFICATION.........................................22

    A. Rule 23(a)(1) Numerosity Is Satisfied...............................22

    B. Rule 23(a)(2) Commonality Is Satisfied................................23

    C. Rule 23(a)(3) Typicality Is Satisfied .......................24

    D. Rule 23(a)(4) Adequacy Is Satisfied ........................25

    E. Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes........26

V. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ...........26

VI. CONCLUSION....................................................................27

- i -

# TABLE OF AUTHORITIES

**Federal Cases**

*Abdullah v. U.S. Security Associates, Inc.*
731 F.3d 952 (9th Cir. 2013) ...................................................................23

*Amchem v. Windsor*
521 U.S. 591, 623 (1997) ........................................................................26

*Avilez v. Pinkerton Gov't Svcs.*
286 F.R.D. 450, 471 (C.D. Cal. 2012).....................................................23

*Brown v. Federal Express Corp.*
249 F.R.D. 580, 587 (C.D. Cal. 2008).....................................................14

*Churchill Village, L.L.C. v. General Electric*
361 F.3d 566, 575 (9th Cir. 2004) ...........................................................26

*Class Plaintiff v. Seattle*
955 F.2d 1268, 1276 (9th Cir. 1992) ........................................................18

*Eisen v. Carlisle & Jacqueline*
417 U.S. 156 (1974).................................................................................26

*Elliot v. Spherion Pacific Work, LLC*
572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ......................................10

*Franklin v. Kaypro Corp.*
884 F.2d 1222, 1225 (9th Cir. 1989) ..........................................................8

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1020 (9th Cir. 1998) ...........................................24, 25, 26

*Ikonen v. Hartz Mountain Corp.*
122 F.R.D. 258, 262 (S.D. Cal. 1988) .....................................................23

*In re Autozone, Inc., Wage and Hour Employment Practices Litigation*
289 F.R.D. 526, 534 (N.D. Cal. 2012) .....................................................23

*In Re Mego Financial Corp. Securities Litig.*
213 F.3d 454, 459 (9th Cir. 2000) ...........................................................18

*In re Pacific Enterprises Securities Litigation*
     47 F.3d 373, 378 (9th Cir. 1995) ................................................................17

*Leyva v. Medline Industries, Inc*.
     716 F.3d 510, 514 (9th Cir. 2013) ......................................................23, 25

*Lynn's Food Stores, Inc. v. United States*
     679 F.2d 1350, 1352 (11th Cir. 1982) .......................................................8

*Morris v. Lifescan, Inc.*
     54 Fed.Appx. 663 (9th Cir. 2003) ............................................................22

*Murillo v. Pacific Gas & Electric Co.*
     266 F.R.D. 468, 477-478 (E.D. Cal. 2010) ................................................8

*National Rural Tele. Coop. v. DIRECTTV, Inc.*
     221 F.R.D. 523, 526 (C.D. Cal. 2004).......................................................11

*Rodriguez v. West Publishing Corp.*
     563 F.3d 948, 963 (9th Cir. 2003) ....................................................8, 9, 22

*Villacres v. ABM Industries, Inc.*
     384 Fed.Appx. 626 (9th Cir. 2010) ..........................................................10

*Washington v. Joe's Crab Shack*
     271 F.R.D. 629, 641-42 (N.D. Cal. 2010)..................................................14


**State Cases**
*Armenta v. Osmose, Inc.*
     135 Cal.App.4th 314, 324 (2005) ...............................................................3


*Bradley v. Networkers Int'l LLC*
     211 Cal.App.4th 1129, 1151 (2012)........................................................4, 24

*Brinker v. Superior Court*
     53 Cal.4th 1004, 1028-1029, 1049 (2012) ................................................4, 9

*Cicairos v. Summit Logistics, Inc.*

    133 Cal.App.4th 949, 963 (2005) ...........................................................4

*Huntington Memorial Hospital v. Superior Court*

    131 Cal.App.4th 893, 902-903 (2005) ....................................................4

*See's Candy Shops, Inc. v. Superior Court*

    210 Cal.App.4th 889, 901-902 (2012) ....................................................3

*Thurman v. Bayshore Transit Management, Inc.*

    203 Cal.App.4th 1112, 1135 (2012) ......................................................16


**Federal Statutes and Rules**

Federal Rules of Civil Procedure 23 .............................................................6

Federal Rules of Civil Procedure 23(e)(2) ....................................................8

Federal Rules of Civil Procedure 26(f) .........................................................7

Federal Rules of Civil Procedure 30(b)(6) ..................................................11

29 U.S.C. § 207(e) ..........................................................................................4


**State Statutes and Rules**

Business & Professions Code § 17200 ..........................................................1

8 California Code of Regulations § 13520 ...................................................10

Labor Code § 203 ............................................................................................5

Labor Code § 226 ......................................................................................5, 10

Labor Code § 226(a) .....................................................................................16

Labor Code § 226.7 .........................................................................................4

Labor Code § 226.7(b) ....................................................................................4

Labor Code § 1194.2 .....................................................................................12

Labor Code § 2698 ..........................................................................................5

Labor Code § 2699(e)(2) ...............................................................................10

**Unpublished Cases**

*Alonzo v. Maximus, Inc.*

Case No. 2:08-CV-06755-JST (MANx), 2011 WL 2437444 at *13

 (C.D. Cal. June 17, 2011) ...................................................................23

*Alvarez v. Nordstrom, Inc.*

Case Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx),

2011 WL 7982552 at *7

(C.D. Cal. May 24, 2011) ...................................................................15

*Angeles v. U.S. Airways, Inc.*

Case No. 12-05860 CRB, 2013 WL 622032 at *10

(N.D. Cal. Feb. 19, 2013) ...............................................................5, 16

*Austin v. Amazon.Com, Inc.*

Case No. C09-1679JLR, 2010 WL 1875811 at *3

(W.D. Wash. May 10, 2010) ..................................................................3

*Barbosa v. Cargill Meat Solutions Corp.*

Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13

(E.D. Cal. July 2, 2013) ......................................................................21

*Casique v. ValleyCrest Landscape Development, Inc.*

Case No. CV09-9114 GHK (SSx)

(C.D. Cal. November 2, 2011)............................................................21

*Chu v. Wells Fargo Investments, LLC*

Case Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1

(N.D. Cal. February 16, 2011)............................................................21

*Fleming v. Covidien*

Case No. ED CV10-01487 RGK (OPx), Document 236 at p. 5

(C.D. Cal. August 12, 2011)...............................................................16

*Gribble v. Cool Transports Inc.*

    Case No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9

    (C.D. Cal. December 15, 2008) ....................................................18

*In re First Capital Holdings Corp. Financial Products*

    Case No. MDL No. 901, 1992 WL 226321 at *2

    (C.D. Cal. June 10, 1992) ............................................................19

*In re Portal Software, Inc. Securities Litig.*

    Case No. C-03-5138 VRW, 2007 WL 4171201 at *3

    (N.D. Cal. Nov. 26, 2007) ...........................................................11

*In re Taco Bell Wage and Hour Actions*

    Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11

    (E.D. Cal. Sept. 26, 2011) ...........................................................15

*Jaime v. Standard Parking Corp.*

    Case No. CV08-04407 AHM (Rzx)

    (C.D. Cal. June 22, 2011) ............................................................21

*Lazarin v. Pro Unlimited, Inc.*

    Case No. C11-03609 HRL, 2013 WL 3541217

    (N.D. Cal. July 11, 2013)..............................................................22

*Mora v. Bimbo Bakeries USA, Inc.*

    Case No. CV 10-3748 JAK (RZx)

    (C.D. Cal. April 16, 2012) ............................................................21

*Provine v. Office Depot, Inc.*

    Case No. 11-00903 SI, 2012 WL 2711085

    (N.D. Cal. July 6, 2012).................................................................15

*Ramirez v. United Rentals, Inc.*

    Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6

    (N.D. Cal. June 12, 2013)..............................................................13

- vi -

*Schiller v. David's Bridal, Inc.*

 Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at \*17

 (E.D. Cal. June 11, 2012) ...............................................................21

*Sorenson v. PetSmart, Inc.*

 Case No. 2:06-CV-02674-JAM-DAD

 (E.D. Cal. December 17, 2008) .....................................................21

*Temple v. Guardsmark LLC*

 Case No. C 09-02124 SI, 2011 WL 723611 at \*7

 (N.D. Cal. Feb. 22, 2011) ...............................................................14

*Williams v. Centerplate, Inc.*

 Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC,

 2013 WL 4525428 at \*4

 (S.D. Cal. August 26, 2013) ...........................................................21

*Willner v. Manpower Inc.*

 Case No. C 11-02846 JSW, 2012 WL 1570789 at \*3

 (N.D. Cal. May 3, 2012) ..........................................................10, 15

**<u>Other Sources</u>**

Manual for Complex Litigation (3rd Ed. 1995) § 30.41 ....................8, 18

4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25 ..............18

4 Newberg et al., Newberg on Class Actions (4th ed. 2013) §14.6 ...................22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiffs Fabio Gonzalez, Matias Madera and Oralia Banda ("Plaintiffs"), individually and on behalf of the proposed Settlement Classes, request that this Court preliminarily approve the Parties' Class Action Settlement Agreement and Joint Stipulation ("Settlement Agreement"), entered by Plaintiffs and Defendant Universal Alloy Corporation ("UAC" or "Defendant").[1]  In their lawsuit, Plaintiffs sought unpaid minimum and overtime wages, premium wages for meal and rest period violations, and derivative statutory and civil penalties.[2]  Plaintiffs' claims stem from UAC's alleged unlawful time-shaving and rounding practices, miscalculation of the regular rate of pay for overtime purposes, and unlawful meal and rest period policies.

The proposed California Settlement Class consists of all current and former hourly non-exempt employees of UAC who worked in California between May 10, 2009, through the date of preliminary approval.  Plaintiffs also seek certification for settlement purposes only of a proposed FLSA Settlement Class consisting of all current and former hourly non-exempt employees of UAC who worked within the United States between May 10, 2009 through the date of preliminary approval, and who ***opt into*** the proposed class action settlement (collectively, the "Settlement Classes").  As an opt-in settlement under the FLSA, no FLSA Settlement Class members will release any claims unless they affirmatively decide to join in this

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Paul K. Haines. The proposed Class Notice, proposed Claim Form and proposed Request for Exclusion Form are attached as Exhibits 1, 2 and 3, respectively, to the Settlement Agreement.

[2] There are ten claims pled in the operative Complaint: (1) Failure to pay overtime wages in violation of California law; (2) Failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (3) Minimum wage violations; (4) Rest period violations; (5) Meal period violations; (6) Failure to furnish complete and accurate wage statements; (7) Waiting time penalties for the late payment of wages; (8) Failure to maintain accurate records; (9) Unfair Competition under Business & Professions Code § 17200 *et seq.*; and (10) Civil penalties under the Private Attorneys General Act ("PAGA").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

settlement.  According to UAC's records, the California Settlement Class consists of approximately 390 current and former hourly non-exempt employees, and the FLSA Settlement Class includes an additional 380 current and former hourly non-exempt employees, for a combined class size of approximately 770.

This proposed settlement comes to fruition only after nearly a year of robust legal research and analysis, extensive investigation and informal discovery, the exchange and analysis of a significant amount of class-wide payroll and timekeeping data, extensive arms-length settlement negotiations that spanned several months, and two private mediation sessions with David Rotman, an experienced wage and hour class action mediator.  Although the parties reached an impasse at mediation on December 4, 2013, the parties continued their settlement negotiations in an effort to avoid protracted litigation, and held a second mediation session with Mr. Rotman on February 18, 2014.  After a second full-day mediation session, the parties reached the proposed class-wide settlement.

If this settlement is approved, UAC will pay a Maximum Settlement Amount of $4,750,000.  After deductions for proposed court-approved Plaintiffs' incentive payments, settlement administration costs, attorney's fees and costs, and payment to the California Labor Workforce Development Agency ("CLWDA") for civil penalties under PAGA, members of the Settlement Classes who file claims will receive substantial monetary payments in the face of hotly disputed claims for the period May 10, 2009 through date of preliminary approval.   As detailed below, this settlement provides a substantial recovery, including 100% of the alleged underpaid overtime and minimum wages based on Defendant's allegedly improper rounding and miscalculation of the regular rate of pay, and substantial compensation for meal and rest period violations and derivative penalty claims.  The average payment to California Settlement Class members is valued at approximately $7,476 and the average payment to the FLSA Settlement Class Members is valued at $840.  Based on the litigation risks involved, Plaintiffs

1   submit that the proposed settlement is well within the range of possible approval.

2   Moreover, the settlement agreement and notice distribution plan are the products of

3   an informed and thoroughly-vetted analysis of the claims and defenses, as well as

4   the likelihood of obtaining class certification, and extensive non-collusive and

5   arm's length settlement negotiations by experienced employment counsel.

6   Therefore, Plaintiffs respectfully request that the Court grant this motion.

7   **II.   FACTUAL SUMMARY.**

8         **A.   Plaintiffs' Claims.**

9         UAC, which touts itself as one of the world's leading producers of hard

10  alloy extrusions, operates two manufacturing and warehouse facilities located in

11  Anaheim, California and Canton, Georgia, and a third facility in Wichita, Kansas,

12  as well as facilities overseas in Romania and Switzerland.  At UAC's California

13  facility, UAC utilizes a time shaving mechanism, whereby hourly employees are

14  paid only for their scheduled shift times, regardless of whether additional hours

15  were actually worked.  At its facilities outside of California, UAC employed a

16  similar mechanism, which also deprived hourly employees of overtime

17  compensation for all hours actually worked.  Plaintiffs asserted that these

18  timekeeping practices are unlawful. *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th

19  314, 324 (2005) ("California's labor statutes reflect a strong public policy in favor

20  of full payment of wages for all hours worked."); *See's Candy Shops, Inc. v.*

21  *Superior Court*, 210 Cal.App.4th 889, 901-902 (2012) ("an employer's rounding

22  policy violates the DOL rounding regulation if it 'systematically

23  undercompensate[s] employees,' such as where the defendant's rounding policy

24  'encompasses only rounding down.'")(citations omitted); *Austin v. Amazon.Com,*

25  *Inc.*, Case No. C09-1679JLR, 2010 WL 1875811 at *3 (W.D. Wash. May 10,

26  2010) ("Contrary to Amazon's arguments, however, the above [Department of

27  Labor] regulation does not give Amazon a blank check to round time in any

28  manner it sees fit.").

In addition, Plaintiffs claimed that UAC provided various forms of bonuses, incentive pay and fringe benefits to their hourly non-exempt employees, but unlawfully failed to include the value of these forms of compensation in non-exempt employees' regular rates of pay.  Consequently, Plaintiffs asserted UAC's payroll practices resulted in a company-wide miscalculation of non-exempt employees' overtime rates and a systematic underpayment of overtime wages under California and Federal law. *See Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893, 902-903 (2005) (payments included in the calculation of the regular rate are generally consistent under state and federal law); 29 U.S.C. § 207(e).

Moreover, because UAC maintained facially unlawful meal and rest period policies that are silent as to the timing and duration of meal and rest periods,[3] Plaintiffs asserted that they and other hourly non-exempt employees were not provided with all meal and rest periods to which they were entitled. *See Brinker v. Superior Court*, 53 Cal.4th 1004, 1028-1029, 1049 (2012) (stating that employers must provide an employee with a 10 minute rest break for every four hours worked or "major fraction thereof," where "major fraction" is equivalent to 2.01 hours, and that "an employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work.").  Despite the failure to authorize and permit all required meal and rest periods, Plaintiffs assert that UAC failed to pay the required premium pay under Labor Code § 226.7 in lieu of providing all required meal and rest periods.[4]

---

[3] UAC's policies simply state "UAC provides meal and rest periods in conformance with the laws," which UAC claimed did not comply with California law. *See, e.g., Bradley v. Networkers Int'l LLC*, 211 Cal.App.4th 1129, 1151 (2012) ("Similarly, an employer has an obligation to provide a rest break, and if the employer fails to do so, the employer cannot claim the employee waived the break."); *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 963 (2005) ("The onus is on the employer to clearly communicate the authorization and permission to its employees.").

[4] Cal. Labor Code § 226.7(b) ("If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Plaintiffs also claimed that UAC forced their non-exempt employees to sign on-duty meal period agreements, despite the fact that the nature of the work did not justify the use of on-duty meal periods.  And on those occasions when meal periods were provided, they were only 20 minutes in duration.

Because of these predicate violations, Plaintiffs maintained UAC failed to comply with its final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226.  Moreover, in addition to statutory penalties, Plaintiffs sought civil penalties under PAGA, Labor Code § 2698 *et seq.*

## B. Defendant Denies Plaintiffs' Claims.

Defendant strenuously denied Plaintiffs' allegations.  Among other things, UAC maintained that it properly calculated and paid all required overtime wages, and did not improperly exclude the value of incentive pay from the regular rate of pay.  UAC also claimed that its timekeeping practices did not deprive Plaintiffs and the putative class of any minimum or overtime wages in the aggregate, and that each facility maintained its own timekeeping policies and practices, thereby posing an obstacle to class certification.  UAC also maintained that it complied with all of its meal and rest period obligations, and that Plaintiffs and the putative class members were provided with the opportunity to take all meal and rest periods to which they were entitled.   With respect to the use of on-duty meal period agreements, UAC claimed that the nature of the work did justify their use.

Moreover, to the extent that Plaintiffs received wage statements that were allegedly inaccurate, UAC asserted that Plaintiffs suffered no actual damage or harm as a result. *See, e.g., Angeles v. U.S. Airways, Inc.*, Case No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) ("A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is

---

employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.").

not sufficient.").  With respect to Plaintiffs' claim for waiting time penalties, UAC alleged that its good-faith belief in the use of its timekeeping and payroll practices precluded the imposition of waiting time penalties since Plaintiffs could not prove that UAC's alleged failure to pay all final wages at the time of separation was "willful."  For these reasons, UAC claimed that it did not engage in any unfair business practices and denied liability under PAGA.  Finally, UAC maintained that Plaintiffs' claims were improper for class treatment under Rule 23 of the Federal Rules of Civil Procedure.

### C.    <u>Procedural History And Discovery Completed.</u>

On May 10, 2013, Matias Madera and Oralia Banda filed a class and representative action complaint against UAC in Orange County Superior Court, before the Honorable Judge Gail A. Andler, alleging overtime and minimum wage violations, meal period violations, and derivative wage statement, waiting time and PAGA penalties.  Declaration of Graham S.P. Hollis ("Hollis Decl."), ¶ 9.  On May 22, 2013, Fabio Gonzalez filed his Complaint in this Court, alleging substantially the same violations, along with a claim for rest period violations, and claim under the Fair Labor Standards Act ("FLSA") for failing to pay all overtime wages.  Declaration of Paul K. Haines ("Haines Decl."), ¶ 9.  After being notified of their overlapping lawsuits, counsel for Plaintiffs in the two actions reached an agreement to litigate both actions together in this Court.  *Id.*  UAC met and conferred with counsel for Plaintiff Gonzalez, and the parties agreed that Defendant's time to file a responsive pleading in the Gonzalez action would be extended to allow Plaintiffs to file an amended complaint in the Gonzalez action which would add Plaintiffs Madera and Banda to the action and consolidate the allegations.  *See* Docket Entry ("DE") Nos. 9 & 14; Haines Decl., ¶ 9.  After the Madera action was dismissed from Orange County Superior Court on September 9, 2013 all three Plaintiffs then filed the operative First Amended Complaint on October 2, 2013. *See* DE No. 19; Hollis Decl., ¶ 9.   Following the conference of

counsel as required by Rule 26(f) of the Federal Rules of Civil Procedure, which was held on September 30, 2013, Plaintiffs served Defendant with six sets of written discovery requests on October 9, 2013. Haines Decl., ¶ 10. UAC filed and served an answer to Plaintiffs' First Amended Complaint on October 24, 2013. *See* DE No. 21. Several weeks of extensive meet and confer efforts followed, and through the meet and confer process, the parties reached an agreement to attend private mediation before David Rotman, a nationally recognized wage and hour class action mediator in California. Haines Decl., ¶ 10. After weeks of negotiation, the parties also agreed to analyse a random sample of payroll and timekeeping data for approximately 16% of the putative class. *Id.*

In preparation for mediation, Plaintiffs retained a data analysis professional to analyse all of the payroll and timecard data produced by UAC. Haines Decl., ¶ 11. Plaintiffs conducted a comprehensive analysis of the data, which included 45,047 shifts worked by 74 members of the California Settlement Class, and an additional 31,323 shifts worked by 74 members of the FLSA Settlement Class who worked outside of California. *Id.* Consequently, Plaintiffs were able to determine the average rate of pay, average number of shifts worked per week, average number of regular-time and overtime hours worked, the length of shifts giving rise to meal and rest period violations, the total aggregate hours lost due to UAC's alleged rounding and/or time shaving practices, and the frequency and value of each different type of incentive payment. *Id.* Using this data, Plaintiffs were able to estimate the total amount of alleged unpaid wages by extrapolating their findings to the entire California and FLSA Settlement Classes. *Id.*

The parties attended mediation with David Rotman in San Francisco on December 4, 2014. Haines Decl., ¶ 12. However, after a full-day of negotiations, the settlement agreements reached an impasse, and the mediation session concluded without a resolution. *Id.* Over the next several weeks, however, the parties stayed in communication and agreed to attend a second mediation session

with Mr. Rotman on February 18, 2014.  *Id.*  At the conclusion of another full-day of negotiations, the parties reached a class-wide resolution of all claims and executed a Memorandum of Understanding outlining the essential terms of the proposed settlement.  *Id.*

On March 25, 2014, the parties advised the Court that they had reached a resolution and later negotiated and drafted the long-form Settlement Agreement which was executed on May 15, 2014.  *Id.*  Plaintiffs now move for preliminary approval of the proposed class action settlement.

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL.

It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).[5]

### A.   The Settlement Is Fair, Adequate, and Reasonable.

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

---

[5] Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).  In this regard, pursuant to a private enforcement action under Section 16(b) of the FLSA, such as this one, a district court may approve a settlement reached as a result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1354.  Thus, the Court should approve the proposed FLSA settlement if it is satisfied that the settlement is the product of contested litigation and determines that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties over FLSA coverage. *Id.*  Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim and Plaintiffs will not repeat them here.  *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez, infra.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiffs address each relevant factor below.[6]

### 1.   <u>The Strength of Plaintiffs' Case</u>.

Although they steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that Defendant possessed legitimate defenses to liability and certification.  For example, regarding the overtime claim, UAC maintained that non-exempt employees were paid for all hours actually worked, and that individual questions of fact predominated concerning whether employees were actually working, thereby making class certification unlikely.  Haines Decl., ¶ 14. Regarding the meal period claim, UAC argued that Plaintiffs and the putative class members voluntarily entered into valid and enforceable on-duty meal period agreements.  *Id*.  Regarding the rest period claim, UAC asserted that it complied with its rest period obligations by making rest periods available in compliance with the Wage Order and under the standards set forth in *Brinker*. *See Brinker*, *supra*, 53 Cal.4th at 1028-1029 (2012) (stating that employers must permit a 10 minute rest break for every four hours worked or "major fraction thereof," where "major fraction" is equivalent to any amount of time in excess of 2 hours); Haines Decl., ¶ 14.

Consequently, UAC asserted that it possessed strong defenses to the derivative waiting time and wage statement penalties, since there existed a "good-faith" dispute that any wages were due, thereby precluding the imposition of

---

[6] Because there are no government participants in the instant lawsuit, Plaintiffs have omitted the seventh factor from discussion.  Should the Court grant preliminary approval of the proposed settlement such that notice is given to the Settlement Class members, Plaintiffs will address the eighth factor in their motion for final approval.

waiting time penalties. *See* 8 Cal. Code of Regulations § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); Haines Decl., ¶ 14.  UAC also maintained that Plaintiffs would not be able to prove that all putative class members experienced "injury" as required under Labor Code § 226.  *See, e.g., Villacres v. ABM Industries, Inc.*, 384 Fed.Appx. 626 (9th Cir. 2010) (granting summary judgment for employer on Labor Code § 226 claim based on lack of injury); Haines Decl., ¶ 14.

Moreover, because Plaintiffs' claims for civil penalties under PAGA were wholly derivative of the underlying minimum, overtime, and meal and rest period claims, UAC asserted that the PAGA claims would rise or fall with such claims. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims.  Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim."); Haines Decl., ¶ 14.  UAC also asserted that any civil penalties were unconstitutional because they were confiscatory since the penalties sought were grossly disproportionate to the actual amount of alleged overtime wages owed. *See, e.g., Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *7 (N.D. Cal. May 3, 2012) ("The Court retains discretion over awards under a PAGA claim and may 'award a lesser amount than the maximum civil penalty amount specified [under PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.'") (citing Cal. Lab. Code § 2699(e)(2));  Haines Decl., ¶ 14.

In short, Plaintiffs' ability to certify, and prevail on their claims was far from guaranteed.  Indeed, "[i]n most situations, unless the settlement is clearly

10

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Thus, this factor supports preliminary approval.

### 2.    Risk, Expense, Complexity, and Duration of Further Litigation.

This factor also weighs in favor of preliminary approval.  Although the parties had engaged in a significant amount of investigation, informal discovery and class-wide data analysis, the parties had not yet completed formal written discovery. *See* Haines Decl., ¶ 10.  Plaintiffs intended to depose UAC's FRCP 30(b)(6) witnesses on all topics related to UAC's policies for provision of incentive pay to non-exempt employees, calculation of the regular rate of pay, timekeeping practices, and meal and rest period practices.  *Id*.  UAC likewise planned to depose Plaintiffs if mediation was unsuccessful, and move for summary adjudication on all or some of the claims.  *Id*.  Moreover, preparation for class certification and a trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or adverse summary judgment ruling.  Haines Decl., ¶ 13.  As a result, the parties would incur considerably more attorneys' fees and costs through trial.  *Id*.  This settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Thus, this factor favors preliminary approval.

### 3.    Risk of Maintaining Class Action Status.

Plaintiffs had not yet filed their motion for class certification when the parties reached this proposed class-wide resolution.  Had the Court certified any claims, UAC intended to decertify the claims.  Haines Decl., ¶ 13.  Absent

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

settlement, there was a risk that there would not be a certified class at the time of trial.  Thus, this factor, too, supports preliminary approval of the settlement.

### 4.    Amount Offered in Settlement Given Realistic Value of Claims.

As detailed immediately below, this proposed settlement provides a substantial monetary recovery for the Settlement Classes in the face of hotly disputed claims. Thus, preliminary approval is appropriate.

With respect to the minimum wage and overtime claims based on UAC allegedly shaving-off hours worked prior to the scheduled start times of their shifts, Plaintiffs' analysis of the data reflected that members of the California Settlement Class were deprived of a total of approximately 82,468 hours over the course of the entire putative class period, and that the non-California members of the FLSA Settlement Class were deprived of an additional 48,000 hours over the same period.  Haines Decl., ¶ 15.  Because UAC's challenged timekeeping practice in California implicated both unpaid minimum and overtime wages, Plaintiffs analyzed the data under a two-tiered approach to come up with a range of total potential liability.  *Id.*

Based on an average rate of pay in California of $15.36, Plaintiffs calculated that if all of the truncated time in California resulted solely in unpaid minimum wages, UAC would face a maximum liability of $2,533,416 (82,468 total hours * $15.36 = $1,266,708, plus an additional $1,266,708 as liquidated damages pursuant to Labor Code § 1194.2).  *Id.*  Alternatively, if all the truncated time resulted in unpaid overtime wages, UAC would face a maximum liability of $1,900,063 (82,468 total hours * $23.04 OT rate).  *Id.*  Therefore, Plaintiffs estimated that UAC's exposure fell somewhere between **$1,900,063** and **$2,533,416**. *Id.*  With respect to the FLSA damages for non-California putative class members, which only implicated an overtime wage analysis, Plaintiffs calculated UAC's exposure as **$1,153,440** (48,000 total hours * $24.03 OT rate).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Id.* These figures assume a 100% probability of prevailing on the merits and certification, which was not certain. *Id. See, e.g., Ramirez v. United Rentals, Inc.*, Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6 (N.D. Cal. June 12, 2013) (denying certification of pre-shift time-shaving claim).

Regarding the regular rate miscalculation claim, Plaintiffs' data analysis focused on annual bonuses received by putative class members, which had an average value in California of $2,242, and an average value outside of California of $2,217. Haines Decl., ¶ 16. Plaintiffs' analysis further indicated an average of 2,259 total hours worked per year in California, and 2,105 outside of California, resulting in required overtime rate increases of $0.99 in California and $1.05 outside of California. *Id.* Plaintiffs therefore calculated that the California class members were underpaid by approximately $211 ($.99 hourly increase * 426 average annual OT hours * .5 OT multiplier) for each year in which they received an annual bonus, and the FLSA class members outside of California were underpaid by approximately $163 for each year in which they received an annual bonus ($1.05 hourly increase * 310 average annual OT hours * .5 OT multiplier). *Id.* Finally, Plaintiffs determined that approximately 352 annual bonuses were paid to California class members during the putative class period, and 365 annual bonuses paid outside of California. *Id.* Therefore, Plaintiffs calculated the unpaid overtime as follows:

$211 annual underpayment * 352 annual bonuses = **$74,272** in unpaid OT wages to the California Settlement Class;

$163 annual underpayment * 365 annual bonuses = **$59,495** in unpaid OT wages to the non-California members of the FLSA Settlement Class. *Id.* Again, these figures assume a 100% probability of prevailing on the merits and certification. *Id.*

With respect to the meal period claim, Plaintiffs assumed for purposes of settlement that legally compliant meal periods were not provided in all instances.

Haines Decl., ¶ 17.  Their analysis reflected a total of 347,220 shifts worked by the California class that would entitled an employee to a meal period, with 59,317 of those shifts in excess of 10 hours, thereby triggering a second meal period obligation.  *Id.*  Therefore, based on an average rate of pay of $15.36, Plaintiffs estimated Defendant's meal period liability as follows:

347,220 violations * $15.36 penalty = $5,333,299 total exposure for first meal period violations;

59,317 violations * $15.36 penalty = $911,109 total exposure for second meal period violations.  *Id.*  Therefore, UAC's maximum exposure for meal period violations totalled $6,244,408.  However, based on UAC's defenses as discussed in Section II.B and III.A.1, *supra*, Plaintiffs discounted the value of the meal period claim by 25% in the event of an adverse certification ruling and further discounted the claim by 25% to account for an adverse merits ruling, to arrive at **$3,512,480.** *Id.*; *see, e.g., Brown v. Federal Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008) (denying certification of meal period claim).

With respect to the rest period claim, Plaintiffs again assumed, for purposes of settlement, that compliant rest periods were never provided.  Haines Decl., ¶ 18.  Therefore, Plaintiffs would be entitled to a rest period premium payment for every one of the 347,220 shifts worked during the putative class period, for a total rest period exposure of $5,333,299 (347,220 violations * $15.36 penalty).  *Id.* Plaintiffs then discounted the value of the rest period claim by 50% for a risk of non-certification and by an additional 50% for a risk of being unsuccessful on the merits. *Id.*; s*ee, e.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641-42 (N.D. Cal. 2010) (denying certification of rest period claim because the lack of time records with respect to rest periods meant that individualized questions would predominate); *Temple v. Guardsmark LLC*, Case No. C 09-02124 SI, 2011 WL 723611 at *7 (N.D. Cal. Feb. 22, 2011) (failing to certify rest period claim because the primary questions were individualized factual questions about how the written

policies interacted with company practice).  Thus Plaintiffs valued the rest period claim at approximately **$1,333,325** in potential exposure.  Haines Decl., ¶ 18.

With respect to the waiting time penalty claim, UAC's records reflected approximately 170 former non-exempt employees in the California Settlement Class who separated their employment within three years preceding the filing of the initial *Madera* action.  Haines Decl., ¶ 19.  Based on an hourly rate of pay of $15.36, Plaintiffs estimated the average waiting time penalty per former employee to be approximately $3,686 ($15.36 * 8 hours * 30 days).  *Id.*  Therefore, Plaintiffs estimated UAC's potential waiting time penalty exposure as follows:

170 former employees * $3,686 average waiting time penalty = $626,620. *Id.*  However, based on UAC's potential defenses (*see* Section III(A)(1), *supra*), Plaintiffs discounted the value of the waiting time penalty claim by 50% in the event of an adverse certification ruling and further discounted the claim by 25% to account for an adverse merits ruling, to arrive at **$234,983**. [7] *Id.*; *see, e.g., In re Taco Bell Wage and Hour Actions*, Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11 (E.D. Cal. Sept. 26, 2011) (denying certification of waiting time claim based on predominance of individual inquiries as to willfulness); *Alvarez v. Nordstrom, Inc.*, Case Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx), 2011 WL 7982552 at *7 ( C.D. Cal. May 24, 2011) (denying certification on same grounds).

With respect to wage statement penalties, for purposes of settlement, Plaintiffs assumed that all 390 California Settlement Class members would be able to obtain the maximum $4,000 in wage statement penalties since there were more

---

[7] *See, e.g., Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012) (denying certification of waiting time class); *Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *3 (N.D. Cal. May 3, 2012) (dismissing waiting time claim for lack of wilfulness).

than 41 pay periods at issue.[8] Haines Decl., ¶ 20.  Thus, Plaintiffs estimated the potential wage statement penalties as follows:

390 non-exempt employees * $4,000 = $1,560,000.  *Id.*  However, again based on UAC's defenses to certification and the merits, Plaintiffs discounted the value of the wage statement penalty claim by 50% for a risk of an adverse certification ruling and an additional 50% to account for an adverse merits ruling, for a projected total of **$390,000**.  *Id.*; *see, e.g., Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (dismissing wage statement claim for lack of injury).

Finally, with respect to PAGA Penalties, Plaintiffs estimated a total PAGA exposure of $3,718,000 for PAGA penalties for the California Settlement Class. Haines Decl., ¶ 21.  Since only 25% of this total would go to the aggrieved employees, Plaintiffs used $929,500, and then discounted that figure by 50% for a risk of losing on the merits and by an additional 75% for the risk of the Court reducing penalties, to arrive at a projected total of $**116,188**.  *Id.*; *see, e.g., Fleming v. Covidien,* Case No. ED CV10-01487 RGK (OPx), Document 236, filed August 12, 2011, at p. 5 (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming trial court's finding that awarding the maximum PAGA penalties would be unjust).

Using these estimated figures, and after discounting the claims for non-certification and/or outright dismissal as explained above, Plaintiffs predicted that their realistic total recovery for the California Settlement Class would be approximately **$7,569,311 - $8,194,664**, and approximately **$1,212,935** for the non-California members of the FLSA Settlement Class, for a combined total of roughly $8.7 to 9.4 million.  Haines Decl., ¶ 22.  The proposed settlement of $4.75

[8] *See* Cal. Labor Code § 226(a) (stating that the penalty for violation of this section is $50 for the initial violation and $100 for each subsequent violation, up to a maximum of $4,000).

million (which will be apportioned 80% to the California Settlement Class and 20% to the FLSA Settlement Class) therefore represents a substantial recovery when compared to Plaintiffs' reasonably forecasted recovery. *Id.* Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate because the proposed settlement compensates the settlement class members for all of their underpaid overtime and minimum wages resulting from the alleged improper rounding and regular rate miscalculation and provides substantial, additional compensation for hotly contested rest and meal period claims, and related penalty claims. *Id.*

### 5. <u>Discovery Completed and the Status of Proceedings</u>.

The parties engaged in a significant amount of investigation, informal class-wide discovery and analysis prior to reaching the proposed settlement. *See* Haines Decl., ¶¶ 10-12.  Not only did UAC produce policies regarding employee hours, work schedules, timekeeping practices, overtime practices, and meal and rest period practices, UAC also produced voluminous timekeeping and payroll information for 148 putative class members (74 from within California, and 74 from outside of California) reflecting approximately 82.8% of the putative class period as of the date of mediation. *Id.*  Plaintiffs had the payroll and timekeeping data statistically analyzed by a third-party consultant. *See* Haines Decl., ¶ 11.  It was only after the exchange of a substantial amount of data and information that the parties participated in two full-day mediation sessions and ultimately reached this proposed settlement. *See* Haines Decl., ¶¶ 10-12.  Thus, this factor supports preliminary approval.

### 6. <u>The Experience and Views of Counsel</u>.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiffs are represented by several experienced wage and hour

class action counsel who collaborated to press Plaintiffs' claims forward against a large employer who retained Jackson Lewis LLP, one of the largest employment-side law firms in the United States. *See* Baltodano Decl., ¶¶ 2-10; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 2-8; Hollis Decl., ¶ 4-10, 15-14; Therefore, this factor strongly supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### B. The Preliminary Approval Standard Is Met.

At this stage, the Court can grant preliminary approval of the settlement and direct that notice be given if the proposed settlement (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation (3d ed. 1995) § 30.41; 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25.   The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiff v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). These criteria are met here.

### 1. The Settlement is Within the Range of Possible Approval.

As detailed above, the proposed settlement reflects a substantial recovery in light of real litigation risks to both merits and certification.  Thus, Plaintiffs submit that the proposed settlement is within the range of possible approval, such that notice should be provided to the settlement class so that they can consider the settlement. *See In Re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate").  The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Classes have had the

1  opportunity to opt-out or object.

2       **2.      The Settlement Resulted from Serious, Informed and Non-**

3            **Collusive Negotiations.**

4       This proposed settlement is the result of hard-fought litigation and extensive

5  arm's-length negotiations by counsel and is, therefore, entitled to an initial

6  presumption of fairness. *See In re First Capital Holdings Corp. Financial*

7  *Products*, Case No. MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10,

8  1992) ("Approval of the settlement is discretionary with the court, but there is

9  typically an initial presumption of fairness where the settlement was negotiated at

10  arm's length.").  As discussed above, this case originated as two separate actions,

11  alleging substantially similar violations, both of which were represented by

12  experienced and competent Plaintiff's counsel who thoroughly investigated the

13  claims prior to filing.  *See* Haines Decl., ¶ 9; Hollis Decl., ¶ 9-10.  Upon learning

14  of the overlapping actions, both sets of Plaintiff's counsel cooperated and

15  collaborated to further vet the claims at issue and file a First Amended Complaint

16  effectively consolidating the two actions.  Haines Decl., ¶ 9.  Plaintiffs conducted

17  fact investigation and extensive legal research, reviewed and analyzed a substantial

18  amount of payroll and timecard data, and retained a statistical economist to

19  conduct a statistical analysis of the data to arrive at estimated damages figures. *See*

20  Haines Decl., ¶¶ 10-12.  The parties reached this settlement only after two separate

21  mediation sessions with David Rotman, who has extensive experience in mediating

22  wage and hour class actions.  *Id.*  The parties each supplied Mr. Rotman with

23  detailed mediation briefs outlining their views of the strengths and weaknesses of

24  each claim and defense. Haines Decl., ¶ 12.  Plaintiffs' mediation brief included

25  detailed calculations of the damages they would expect the respective classes to be

26  awarded were they to prevail on each claim.  *Id.*  Even after the parties had come to

27  an initial agreement, both sides continued to negotiate the finer points of the

28  proposed settlement for several months while drafting the long-form settlement

agreement.  *Id*.  Therefore, this factor also supports preliminary approval.

### 3. The Settlement is Devoid of Obvious Deficiencies.

If the Court preliminarily approves this settlement, UAC will pay a Maximum Settlement Amount ("MSA") of $4,750,000 dollars which shall be distributed to the Settlement Classes on a claims-made basis with a guaranteed minimum payment of fifty percent (50%) of the Net Settlement Amount ("NSA") to be distributed to the Settlement Classes.  The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Maximum Settlement Amount: | $4,750,000 |
| Minus Court-approved attorney's fees (30%): | $1,425,000 |
| Minus Court-approved costs: | $45,000 |
| Minus Court-approved incentive payments: | $17,500 |
| Minus PAGA settlement allocation: | $7,500 |
| Minus settlement administration costs: | $20,000 |
| Net Settlement Amount: | **$3,235,000** |

After deducting amounts for court-approved Plaintiffs' incentive payments, costs of settlement administration, approved attorney's fees and costs, and the PAGA payment to the CLWDA, the settlement requires UAC to pay a NSA of up to $**3,235,000** to all members of the Settlement Classes who file valid and timely claims. Haines Decl., ¶ 23.  The Settlement Class members are collectively guaranteed at least fifty percent (50%) of the NSA.  *Id*.  Any remaining unclaimed funds of the NSA will revert to UAC.  *Id*.

The NSA will be allocated to the Settlement Classes as follows: 20% of the NSA will be allocated to the FLSA Settlement Class, with each member of the FLSA Settlement Class taking a proportional share based on their total pay periods worked during the settlement period; 10% of the NSA will be allocated to those members of the California Settlement Class who separated their employment from Defendant within the three years preceding the filing of this Action, with each former employee taking an equal share; and the remaining 70% of the NSA will be allocated to all of the California Settlement Class members, with each member

taking a proportional share based on their total pay periods worked during the settlement period.  Haines Decl., ¶ 24.  The average payment to California Settlement Class members is valued at approximately $7,476 and the average payment to the FLSA Settlement Class Members is valued at $840. *Id.* These figures will vary depending on which sub-classes the individual is a member of, and the number of pay periods during which the Settlement Class member was employed.  *Id.*  This average recovery per class member is exceptional when compared to other wage and hour class action settlement involving non-exempt employees.[9]

In addition, the parties have agreed to designate $10,000 of the MSA for PAGA penalties, seventy-five percent (75%) of which will go to the CLWDA, which is appropriate. *See, e.g.*, *Chu v. Wells Fargo Investments, LLC*, Case Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA payment of $7,500 to the CLWDA out of $6.9 million

---

[9] *See, e.g., Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78. Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of proposed class action settlement where average recovery to Settlement Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of class action settlement based on average settlement class member recovery of $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012) (granting final approval of settlement where average Settlement Class member recovery was $561.58); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60); *Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees yielded maximum settlement payment of $922.29 and average settlement payment of $601.91); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).

common-fund settlement); *Lazarin v. Pro Unlimited, Inc.*, Case No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA out of $1.25 million common-fund settlement); Haines Decl., ¶ 23.

Moreover, the proposed incentive payments to Plaintiffs ($7,500 to Plaintiff Madera, and $5,000 each to Plaintiffs Gonzalez and Banda) do not bestow preferential treatment.[10]  Proposed Class Counsel will also file a separate motion for approval of attorney's fees not to exceed 30% of the MSA for all past and future attorney's fees necessary to prosecute, settle and administer the Litigation and this proposed Settlement, and file a separate motion for verified litigation costs not to exceed forty-five thousand dollars ($45,000.00).[11]  Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

## IV.  THE SETTLEMENT MERITS CERTIFICATION.

### A.  Rule 23(a)(1) Numerosity Is Satisfied.

Numerosity is satisfied because there are approximately 390 current and former non-exempt managers in the proposed California Settlement Class, and

---

[10] As will by fully briefed at the time of moving for final approval, Plaintiffs' requested incentive payments are intended to recognize the time and effort that Plaintiffs expended on behalf of the Settlement Classes. *See Rodriguez, supra*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases … and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action.").  Here, Plaintiffs attended numerous in-person and telephonic meetings with Plaintiffs' Counsel, and provided invaluable insight and data regarding UAC's timekeeping, wage calculation, meal period and rest period practices.  Haines Decl., ¶ 8.  Moreover, Plaintiffs also agreed to a broader release of all known and unknown claims including claims which are not wage and hour related. *Id*.  With respect to Plaintiff Madera, he also travelled from Los Angeles to San Francisco for the first mediation session.  *Id*.

[11] Although requests for attorney's fees amounting to 33 and 1/3% of a common fund are commonly approved in wage and hour class action settlements, Plaintiffs' counsel will only request 30%. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming a 33% award); 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) §14.6 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

22

1  approximately 380 in the proposed FLSA Settlement Class. *See Ikonen v. Hartz*

2  *Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that classes of 40

3  or more members satisfy numerosity); Haines Decl., ¶ 13.

4                  **B.**    **Rule 23(a)(2) Commonality Is Satisfied.**

5          Plaintiffs maintain that the settlement class satisfies commonality because

6  there are common questions of fact and law arising from Plaintiffs and the

7  proposed settlement classes' employment with UAC, such as UAC's allegedly

8  improper timekeeping practices, miscalculation of the regular rate of pay for

9  overtime purposes, unlawful meal and rest period policies, and UAC's resultant

10 violations for waiting time, wage statement and PAGA penalties – all of which

11 Plaintiffs contend arise from a common core of salient facts. *See, e.g., Abdullah v.*

12 *U.S. Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013) (certifying meal period

13 claim based on on-duty meal period agreement); *Leyva v. Medline Industries, Inc.*,

14 716 F.3d 510, 514 (9th Cir. 2013) (certifying regular rate claim because "[h]ere,

15 unlike Comcast, if putative class members prove Medline's liability, damages will

16 be calculated based on the wages each employee lost due to Medline's unlawful

17 practices."); *Avilez v. Pinkerton Gov't Svcs.*, 286 F.R.D. 450, 471 (C.D. Cal. 2012)

18 (certifying meal period claim under California law based on defendant employer's

19 on-duty meal period agreement because "the document that Defendants required

20 employees to sign stating that the nature of work prevented off-duty *meal* breaks is

21 highly relevant to the issue of whether Defendant's nature of work defense raises a

22 common question as to the putative class' claims for *meal* break violations");

23 *Alonzo v. Maximus, Inc.*, Case No. 2:08-CV-06755-JST (MANx), 2011 WL

24 2437444 at *13 (C.D. Cal. June 17, 2011) (overtime pay claim based on the

25 alleged miscalculation of the regular rate of pay certified under Rule 23(b)(3)); *In*

26 *re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D.

27 526, 534 (N.D. Cal. 2012) (certifying rest period claim, because the claim was

28 "based entirely on the legality of Defendant's uniform written rest break policy");

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Bradley v. Networkers Int'l LLC*, 211 Cal.App.4th1129, 1151 (2012) ("Similarly, an employer has an obligation to provide a rest break, and if the employer fails to do so, the employer cannot claim the employee waived the break.  Under the logic of these holdings, when an employer has not authorized and not provided legally-required meal and/or rest breaks, the employer has violated the law and the fact that an employee may have actually taken a break or was able to eat food during the work day does not show that individual issues will predominate in the litigation.").

## C.   <u>Rule 23(a)(3) Typicality Is Satisfied.</u>

Here, the claims of Plaintiffs are typical of those held by other non-exempt employees.  Plaintiff Madera was employed by UAC as an hourly non-exempt employee from approximately November 2, 2011 to January 10, 2013, Plaintiff Gonzalez was employed by UAC as an hourly non-exempt employee from approximately May 1996 to June 2, 2012, and Plaintiff Banda was employed by UAC as an hourly non-exempt employee from approximately October 2005 to February 15, 2013. Haines Decl., ¶ 8.  All three Plaintiffs were subject to UAC's challenged timekeeping policy, signed on-duty meal period agreements, received various forms of incentive pay during their employment, and regularly worked overtime hours and shifts which triggered meal and rest period obligations.  *Id*. Nonetheless, the value of the incentive pay was never included in any Plaintiffs' regular rate of pay for overtime purposes, and all Plaintiffs assert that they were not paid for all hours actually worked, and did not receive all compliant meal and rest periods to which they were entitled nor received premium pay in lieu thereof . *Id*.  According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Because the proposed settlement class will consist only of other non-exempt employees like Plaintiffs, and because Plaintiffs' claims

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

stem from UAC's policies and practices regarding timekeeping, calculation of the regular rate, rest and meal periods, provision of wage statements, and the payment of final wages, typicality is satisfied.

### D.    Rule 23(a)(4) Adequacy Is Satisfied.

Plaintiffs are also adequate as class representatives under Rule 23(a)(4).  To satisfy this requirement, Plaintiffs and their counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the classes. *See Hanlon*, *supra*, 150 F.3d at 1020.  Here, there is no conflict of interest between Plaintiffs and the proposed settlement classes consisting of other non-exempt employees of UAC.  As hourly non-exempt employees, Plaintiffs pressed forward claims for unpaid wages and related penalties resulting from UAC's alleged unlawful overtime and rest and meal period policies and practices.  As detailed above, the proposed settlement reflects a substantial recovery of the settlement class members' alleged damages.  Given the relatively small amounts at issue, Plaintiffs assert that it is unlikely that any class member, especially a current employee, would have pursued these claims against Defendant individually. *See, e.g., Leyva*, *supra*, 716 F.3d at 515 ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication.").  Finally, Plaintiffs' counsel diligently litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the settlement class members.  As set forth in the concurrently filed Declarations of Hernaldo J. Baltodano, Paul K. Haines, Graham S.P. Hollis, Plaintiffs' counsel are adequate to represent the proposed Settlement Classes given their qualifications, skills, and experience. *See* Baltodano Decl., ¶¶ 2-10; Haines Decl., ¶¶ 2-8; Hollis Decl., ¶ 4-10.

///

### E.   Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes.

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1997).  Because Plaintiffs seeks certification for settlement purposes only, however, manageability of trial need not be considered. *See Id.* at 620.  As all hourly non-exempt employees were allegedly deprived of all minimum and overtime wages and were subject to UAC's timekeeping, payroll, and rest and meal period policies and practices, the proposed Settlement Classes are "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon*, *supra*, 150 F.3d at 1022.  Plaintiffs assert that this common nucleus of facts includes, for example, UAC's allegedly improper timekeeping practices, miscalculation of the regular rate and unlawful meal and rest period policies – all of which predominate over individual questions.

## V.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS.

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, Plaintiffs propose that the settlement be administered by CPT Group, Inc., an experienced class action settlement administrator, who will mail the proposed Class Notice, Consent to Join Settlement and Claim Forms and Request for Exclusion Forms to the Settlement Classes. *See* Declaration of Julie Green and attached exhibits.  The proposed Class Notice advises class members of the key terms of the settlement and uniform 60-day deadline to file a claim, opt-out, or file an objection to the settlement, provides a summary of the alleged claims, explains the recovery formula and expected

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

recovery amount for each member of the Settlement Classes, provides contact information for Class Counsel, and notifies them of the date for the final approval hearing.  *Id.*

## VI.   **CONCLUSION.**

Based on these reasons, Plaintiffs respectfully request that the Court grant this motion.

Respectfully submitted,

Dated:  May 16, 2014                    BOREN, OSHER & LUFTMAN LLP


By:    __/s/ Paul K. Haines_____
       Paul K. Haines, Esq.
       Attorneys for Plaintiffs, the Classes and
       Aggrieved Employees

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL