1
2
3
4
5

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
222 N. Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax: (310) 322-2228

6
7
8
9
10
11

**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

12
13

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees
(additional counsel for Plaintiffs listed
on following page)

14

15

## UNITED STATES DISTRICT COURT

16

## CENTRAL DISTRICT OF CALIFORNIA

17

18
19
20

FABIO GONZALEZ, MATIAS
MADERA, ORALIA BANDA, as
individuals and on behalf of all others
similarly situated,

21

                    Plaintiffs,

22

23         v.

24
25

UNIVERSAL ALLOY CORPORATION,
a California Corporation, and DOES 1
through 10,

26

27                    Defendants.

28

Case No.  SACV 13-00807 JVS
(MRWx)

**PLAINTIFFS' NOTICE OF
MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT;
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF**

Judge:  Hon. James V. Selna
Date:    November 10, 2014
Time:    1:30 p.m.
Dept.:   10C

1

**GRAHAM HOLLIS APC**
Graham S.P. Hollis (SBN 120577)
Email: ghollis@grahamhollis.com
Kristina A. De La Rosa (SBN 279821)
Email: kdelarosa@grahamhollis.com
3555 Fifth Avenue
San Diego, California 92103
Tel: (619) 692-0800
Fax: (619) 692-0822

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

NOTICE IS HEREBY GIVEN that on Monday, November 10, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701-4516, before the Honorable James V. Selna, Plaintiffs Fabio Gonzalez, Matias Madera and Oralia Banda ("Plaintiffs") as individuals and on behalf of all others similarly situated, will and hereby do hereby move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure

2. Finally certifying the FLSA Settlement Class for settlement purposes under the Fair Labor Standards Act ("FLSA");

3. Granting final approval to the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Joint Stipulation ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

4. Appointing Plaintiffs as Class Representatives for settlement purposes;

5. Appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP, Paul K. Haines of Boren, Osher & Luftman LLP, and Graham S.P. Hollis and Kristina A. De La Rosa of Graham Hollis APC as Class Counsel for settlement purposes;

6. Entering final judgment in the form of the proposed Final Approval Order filed herewith.

///
///
///
///
///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1         This Motion is based upon this Notice, the attached Memorandum of Points

2    and Authorities, the supporting Declarations of Graham S.P. Hollis, Hernaldo J.

3    Baltodano, Paul K. Haines, and Ani Shirinian and exhibits attached thereto, the

4    proposed Order, the Settlement Agreement, all other pleadings and papers on file

5    in this action, and any oral argument or other matter that may be considered by the

6    Court.

7

8                                          Respectfully submitted,

9    Dated:  October 10, 2014        BOREN, OSHER & LUFTMAN LLP

10

11                              By:    _/s/Paul K. Haines_____

12                                   Paul K. Haines, Esq.

13                                   Attorneys for Plaintiffs, the Classes and
                                Aggrieved Employees

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................1

II. FACTUAL SUMMARY ..............................................2

   A. Plaintiffs' Claims ..............................................3

   B. This Litigation's Procedural History ....................4

   C. The Parties' Discovery and Analysis ..................5

III. THIS SETTLEMENT WARRANTS FINAL APPROVAL ...........................6

   A. The Settlement Is Fair, Adequate, and Reasonable ..................................7

      1. The Strength of Plaintiffs' Case ....................................8

      2. Risk, Expense, Complexity, and Duration of Further Litigation ...10

      3. Risk of Maintaining Class Action Status ......................11

      4. Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks....................11

      5. Discovery Completed and the Status of Proceedings ...................13

      6. The Experience and Views of Counsel .........................13

      7. The Reaction of the Class Members to the Proposed Settlement ..14

IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED........15

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...17

VI. CONCLUSION.................................................18

## TABLE OF AUTHORITIES

**Federal Cases**

*Churchhill Village, L.L.C. v. General Electric*
     361 F.3d 566, 575 (9th Cir. 2004) ...............................................................17

*Class Plaintiffs v. City of Seattle*
     955 F.2d 1268, 1276 (9th Cir. 1992) ............................................................7

*Eisen v. Carlisle & Jacqueline*
     417 U.S. 156, 173 (1974) ...............................................................17

*Elliot v. Spherion Pacific Work, LLC*
     572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ...........................................9

*In re Heritage Bond Litig.*
     546 F.3d 667, 674 (9th Cir. 2008) ............................................................6

*In re Pacific Enterprises Securities Litigation*
     47 F.3d 373, 378 (9th Cir. 1995) ............................................................14

*In re Syncor ERISA litigation*
     516 F.3d 1095, 1101 (9th Cir. 2008) ............................................................7

*Linney v. Cellular Alaska Partnership*
     151 F.3d 1234, 1242 (9th Cir. 1998) ............................................................11

*Lynn's Food Stores, Inc. v. United States*
     679 F.2d 1350, 1353 (11th Cir. 1982) ............................................................7

*Marshall v. Holiday Magic, Inc.*
     550 F.2d 1173, 1178 (9th Cir. 1977) ............................................................14

*Murillo v. Pacific Gas & Electric Co.*
     266 F.R.D. 468, 477-478 (E.D. Cal. 2010) ............................................................7

*National Rural Tele. Coop. v. DIRECTV, Inc.*
     221 F.R.D. 523, 526 (C.D. Cal. 2004)............................................................10, 14

*Rodriguez v. West Publishing Corp.*
     563 F.3d 948 (9th Cir. 2009) ............................................................7, 8

*Scott v. Aetna Servs., Inc.*
    210 F.R.D. 261, 266 (D. Conn. 2002) ........................................15

*Villacres v. ABM Industries, Inc.*
    384 Fed.Appx. 626 (9th Cir. 2010) ..............................................9


**State Cases**

*Brinker v. Superior Court*
    53 Cal.4th 1004, 1028-1029 (2012) ..............................................9


**Federal Statutes and Rules**

29 U.S.C. § 216(b) ....................................................................................2


**State Statutes and Rules**

8 Cal. Code of Regulations § 13520 ........................................................9


**Unpublished Cases**

*Barbosa v. Cargill Meat Solutions Corp.*
    Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13
    (E.D. Cal. July 2, 2013) ..............................................................13

*Barcia v. Contain-A-Way, Inc.*
    Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5
    (S.D. Cal. Mar. 6, 2009) ............................................................15

*Casique v. ValleyCrest Landscape Development, Inc.*
    Case No. CV09-9114 GHK (SSx)
    (C.D. Cal. November 2, 2011)....................................................12

*Chu v. Wells Fargo Investments, LLC*
    Case No. C 05-4526 MHP, C 05-7924 MHP, 2011 WL 672645 at *1
    (N.D. Cal. February 16, 2011)......................................................8

*Forrand v. Fed. Express Corp.*
Case No. CV 08-1360 DSF (PJWx), 2013 WL 1793951 at *5
(C.D. Cal. April 25, 2013) ...................................................................8

*Gribble v. Cool Transports Inc.*
Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9
(C.D. Cal. December 15, 2008) ..........................................................14

*In re Portal Software, Inc. Securities Litig.*
Case No. C-03-5138 VRW, 2007 WL 4171201 at *3
(N.D. Cal. Nov. 26, 2007) .................................................................10

*Jaime v. Standard Parking Corp.*
Case No. CV08-04407 AHM (Rzx)
(C.D. Cal. June 22, 2011) ..................................................................12

*Jankowski v. Castaldi*
Case No. 01CV0164 (SJF) (KAM), 2006 WL 118973 at *2
(E.D. N.Y. January 13, 2006) .............................................................15

*Lazarin v. Pro Unlimited, Inc.*
Case No. C11-03609 HRL, 2013 WL 3541217 at *2
(N.D. Cal. July 11, 2013) .....................................................................8

*Mora v. Bimbo Bakeries USA, Inc.*
Case No. CV 10-3748 JAK (RZx)
(C.D. Cal. April 16, 2012) ..................................................................12

*Ramirez v. United Rentals, Inc.*
Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6
(N.D. Cal. June 12, 2013) .....................................................................8

*Rodriguez v. D.M. Camp & Sons*
Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4
(E.D. Cal. May 15, 2013) ...................................................................15

- iv -

*Schiller v. David's Bridal, Inc.*

    Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17

    (E.D. Cal. June 11, 2012) .......................................................13, 16

*Shea v. Ryla Teleservices*

    Case No. 1:11-cv-0626-AWI-BAM, 2012 WL 4210291 at *3

    (E.D. Cal. September 18, 2012)...............................................15

*Sorenson v. PetSmart, Inc.*

    Case No. 2:06-CV-02674-JAM-DAD

    (E.D. Cal. December 17, 2008) ...............................................12

*Williams v. Centerplate, Inc.*

    Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC,

    2013 WL 4525428 at *4

    (S.D. Cal. August 26, 2013) ....................................................13

*Wren v. RGIS Inventory Specialists*

    Case No. C-06-05778 JCS, 2011 WL 1230826 at *10

    (N.D. Cal. April 1, 2011).........................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

Plaintiffs Fabio Gonzalez, Matias Madera and Oralia Banda ("Plaintiffs") seek final approval of this class action settlement.   Brought on behalf of approximately 775 non-exempt employees of Defendant Universal Alloy Corporation ("UAC" or "Defendant"), this settlement provides substantial monetary payments to a class of California employees ("California Class") for hotly disputed claims for unpaid minimum and overtime wages based on UAC's alleged time-shaving policy, additional overtime wages based on UAC's alleged miscalculation of the regular rate of pay, alleged meal and rest period violations, and derivative penalty claims for wage statement violations, waiting time penalties and civil penalties under PAGA.  This settlement also compensates a nationwide class ("FLSA Class") for overtime wages based on UAC's alleged violation of the Fair Labor Standards Act arising from UAC's alleged time-shaving and regular rate miscalculation.  (Hereinafter, the California Class and FLSA Class are at times referred to collectively as the "Settlement Classes").  The $9,630.28, average payment to formerly employed California Class members, $7,945.38 average payment to currently employed California Class members, and $940.61 average payment to non-California members of the FLSA Class significantly exceeds the average recovery in similar recent California and FLSA wage and hour class action settlements.  Not a single class member objected to the settlement, and 81.64% of the available funds were claimed by members of the Settlement Classes.  Only those FLSA settlement class members who affirmatively opted-in to the Settlement will release claims under the FLSA.

In its June 16, 2014, order granting preliminary approval, this honorable Court concluded that the settlement "is sufficiently fair, adequate, and reasonable so that it should be submitted to the class members." *See* Docket Entry ("DE") No. 32 at 18.  The Court certified the California Class under Rule 23(e), defined as:

1

"All current and former hourly, non-exempt employees of UAC who worked in California at any point from May 10, 2009 through June 16, 2014." *See id.* at 6. The Court also certified the FLSA Class under 29 U.S.C. § 216(b), defined as: "All current and former hourly, non-exempt employees of UAC who worked at any point from May 10, 2010 through June 16, 2014." *See id.* at 10.

Notice of the proposed settlement was provided via first class mail to 774 members of the Settlement Classes.   Over 77% of the members of the California Class filed valid claims, accounting for more than 90% of all of California pay periods.   Additionally, approximately 49% of the members of the FLSA Class affirmatively opted-in to the FLSA Class, accounting for more than 58% of the FLSA pay periods.   Only 3 California Class members elected to opt-out of the settlement (less than 0.7%).   In light of the exemplary recovery for the Settlement Classes and overwhelmingly positive response received from the Settlement Classes, Plaintiffs respectfully request that the Court grant final approval.

## II.   <u>FACTUAL SUMMARY</u>.

### A.   <u>Plaintiffs' Claims</u>.

UAC, which touts itself as one of the world's leading producers of hard alloy extrusions, operates two manufacturing and warehouse facilities located in Anaheim, California and Canton, Georgia, and a third facility in Wichita, Kansas, as well as facilities overseas in Romania and Switzerland.   Plaintiffs are each former non-exempt employees who worked at UAC's California facility during the class period.   *See* Declaration of Graham S.P. Hollis ("Hollis Decl."), ¶ 5; Declaration of Paul K. Haines ("Haines Decl."), ¶ 8.   Plaintiffs asserted that UAC utilized a time shaving mechanism whereby hourly employees in California and the United States were paid only for their scheduled shift times, regardless of whether additional hours were actually worked, depriving employees of all overtime wages earned based on hours actually worked.   Plaintiffs also asserted

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

that UAC failed to incorporate various forms of bonuses and incentive pay into their hourly non-exempt employees' regular rates of pay, thereby resulting in a company-wide miscalculation of overtime wages.  Finally, Plaintiffs alleged that UAC maintained facially unlawful meal and rest period policies that were silent as to the timing and duration of meal and rest periods, and utilized unlawful on-duty meal period agreements that were not justified by the nature of the work being performed.  Because of these predicate wage and hour violations, Plaintiffs also sought statutory waiting time and wage statement penalties, and civil penalties under the Private Attorneys General Act ("PAGA").

UAC strenuously denied Plaintiffs' allegations.  Among other things, UAC maintained that it properly calculated and paid all required overtime wages, and did not improperly exclude the value of incentive pay from the regular rate of pay.  UAC also claimed that its timekeeping practices did not deprive Plaintiffs and the putative class of any minimum or overtime wages in the aggregate, and that each facility maintained its own timekeeping policies and practices, thereby posing an obstacle to class certification.  UAC also maintained that it complied with all of its meal and rest period obligations, and that Plaintiffs and the putative class members were provided with the opportunity to take all meal and rest periods to which they were entitled.   With respect to the use of on-duty meal period agreements, UAC claimed that the nature of the work did justify their use.  Additionally, UAC asserted that Plaintiffs could not establish that they had suffered any actual damages as a result of allegedly defective wage statements, or that the alleged failure to timely pay all final wages was willful.  For these reasons, UAC claimed that it did not engage in any unfair business practices and denied liability under PAGA.  Finally, UAC maintained that Plaintiffs' claims were improper for class and/or collective action treatment under Rule 23 of the Federal Rules of Civil Procedure and the FLSA, respectively.

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**B.**   **This Litigation's Procedural History.**

On May 10, 2013, Matias Madera and Oralia Banda filed a class and representative action complaint against UAC in Orange County Superior Court, before the Honorable Judge Gail A. Andler, alleging overtime and minimum wage violations, meal period violations, and derivative wage statement, waiting time and PAGA penalties.  Hollis Decl., ¶ 5.  On May 22, 2013, Fabio Gonzalez filed his Complaint in this Court, alleging substantially the same violations, along with a claim for rest period violations, and claim under the FLSA for failing to pay all overtime wages.  Declaration of Paul K. Haines ("Haines Decl."), ¶ 8.  After being notified of their overlapping lawsuits, counsel for Plaintiffs in the two actions reached an agreement to litigate both actions together in this Court.  *Id.*  UAC met and conferred with counsel for Plaintiff Gonzalez, and the parties agreed that Defendant's time to file a responsive pleading in the Gonzalez action would be extended to allow Plaintiffs to file an amended complaint in the Gonzalez action which would add Plaintiffs Madera and Banda to the action and consolidate the allegations. *See* Docket Entry ("DE") Nos. 9 & 14; Haines Decl., ¶ 8.  After the Madera action was dismissed from Orange County Superior Court on September 9, 2013 all three Plaintiffs then filed the operative First Amended Complaint on October 2, 2013. *See* DE No. 19.   After the initiation of formal discovery and the filing of UAC's Answer on October 24, 2013, several weeks of extensive meet and confer efforts followed, and through the meet and confer process, the parties reached an agreement to attend private mediation before David Rotman, a nationally recognized wage and hour class action mediator in California.  Haines Decl., ¶ 8.  After several additional weeks of negotiation, UAC agreed to produce a random sample of payroll and timekeeping data for approximately 16% of the putative class.  *Id.*

After months of factual investigation, informal discovery, extensively reviewing the data produced by UAC, and retaining a data analysis professional to

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

analyze payroll and timekeeping data (*See* Section II(C), *infra*), on December 4, 2014, the parties participated in mediation with David Rotman, one of the preeminent wage and hour class action mediators in California.  Haines Decl., ¶ 12.  However, after a full-day of negotiations, the settlement agreements reached an impasse, and the mediation session concluded without a resolution.  *Id.*  Over the next several weeks, however, the parties stayed in communication and agreed to attend a second mediation session with Mr. Rotman on February 18, 2014.  *Id.*  At the conclusion of another full-day of negotiations, the parties reached a proposed class-wide resolution of all claims and executed a Memorandum of Understanding outlining the essential terms of the proposed settlement.  *Id.*  After weeks of additional negotiations concerning the terms of the proposed settlement, Plaintiffs submitted their Motion for Preliminary Approval on May 16, 2014.   On June 16, 2014, this Court granted preliminary approval. *See* DE Nos. 31 & 32.  Plaintiffs now move this Court for final approval.

      **C.**      <u>**The Parties' Discovery and Analysis.**</u>

        Prior to mediation, the parties engaged in a significant amount of fact investigation, legal research and analysis, and formal and informal discovery.  Following the conference of counsel as required by Rule 26(f) of the Federal Rules of Civil Procedure, which was held on September 30, 2013, Plaintiffs served Defendant with six sets of written discovery requests on October 9, 2013.  Haines Decl., ¶ 9.  Although the parties agreed to a stay of further formal discovery pending mediation, in advance of mediation, UAC produced more than 17,000 pages of payroll and timecard documents and data, spanning 45,047 shifts worked by 74 members of the California Settlement Class, and an additional 31,323 shifts worked by 74 members of the FLSA Settlement Class who worked outside of California.  *Id.*  Plaintiffs reviewed and analyzed these documents and data, and conducted further fact investigation into UAC's meal and rest period practices, and conducted extensive legal research and analysis into legal theories underlying the

5

minimum wage, overtime, meal period, rest period, and derivative penalty claims and UAC's defenses thereto. *Id.*

Plaintiffs retained a data analysis professional to analyse all of the payroll and timecard data produced by UAC. *Id.* Plaintiffs conducted a comprehensive analysis of the data, and determined the average rate of pay, average number of shifts worked per week, average number of regular-time and overtime hours worked, the number and length of shifts giving rise to meal and rest period violations, the total aggregate hours lost due to UAC's alleged rounding and/or time shaving practices, and the frequency and value of each different type of incentive payment. *Id.* Using this data, Plaintiffs were able to estimate the total amount of alleged unpaid wages by extrapolating their findings to the entire California and FLSA Settlement Classes. *Id.*

In summary, the parties held two separate mediation sessions and ultimately resolved this case only after exchanging their divergent views and analyses of the claims and defenses thereto, and exchanging a substantial amount of information and data over the course of several months. Indeed, as stated by the Court in its order granting preliminary approval, "the parties reached this Settlement after well-informed and adversarial negotiations, in which the strengths and weaknesses of the claims and defenses of the parties were considered." DE No. 32 at14. This extensive exchange allowed the parties to appreciate the uncertainty, expense, and risk involved in this litigation.

## III. THIS SETTLEMENT WARRANTS FINAL APPROVAL.

A proposed class action settlement can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). Thus, in order to approve this proposed class action settlement, this Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008). According to the Ninth Circuit, "there is a strong

6

judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In this regard, pursuant to a private enforcement action under Section 16(b) of the FLSA, such as this one, a district court may approve a settlement reached as a result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1355. Thus, the Court should approve the proposed FLSA settlement if it is satisfied that the settlement is the product of contested litigation and determines that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties over FLSA coverage. *Id.* Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim and Plaintiffs will not repeat them here. *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).

### A. The Settlement Is Fair, Adequate, and Reasonable.

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

7

counsel; (7) the presence of a governmental participant; [1] and (8) the reaction of the class members to the proposed settlement.  *See Rodriguez*, *supra*, 563 F.3d at 963.  Plaintiffs address each of these factors below.

### 1.   The Strength of Plaintiffs' Case.

Although they steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that UAC possessed legitimate defenses to liability and certification.  For example, regarding the overtime claim, UAC maintained that non-exempt employees were paid for all hours actually worked, and that individual questions of fact predominated concerning whether employees were actually working, thereby making class certification unlikely.  *See, e.g., Ramirez v. United Rentals, Inc.*, Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6 (N.D. Cal. June 12, 2013) (denying certification of pre-shift truncation claim);  *Forrand v. Fed. Express Corp.*, Case No. CV 08-1360 DSF (PJWx), 2013 WL 1793951 at *5 (C.D. Cal. April 25, 2013) (denying certification of alleged unlawful rounding claim, stating, "After conducting "a rigorous analysis" to determine whether class treatment is appropriate, in light of *Comcast,* the Court finds that Green has failed to demonstrate that class treatment under Rule 23(b)(3) is appropriate for her

---

[1] This factor is not addressed because there is no governmental participant. *See, e.g., Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").  However, because Plaintiffs pled a claim under PAGA, the California Labor and Workforce Development Agency will receive a payment of $7,500 should the Court grant final approval.  This payment comports with PAGA payments in other class action settlements. *See, e.g., Chu v. Wells Fargo Investments, LLC*, Case No. C 05-4526 MHP, C 05-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA payment of $7,500 to the CLWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc*., Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA out of $1.25 million common-fund settlement).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

proposed unpaid on-the-clock-class."); Haines Decl., ¶ 11.  Regarding the meal period claim, UAC argued that Plaintiffs and the putative class members voluntarily entered into valid and enforceable on-duty meal period agreements. *Id.* Regarding the rest period claim, UAC asserted that it complied with its rest period obligations by making rest periods available in compliance with the Wage Order and under the standards set forth in *Brinker*. *See Brinker v. Superior Court*, 53 Cal.4th 1004, 1028-1029 (2012) (stating that employers must permit a 10 minute rest break for every four hours worked or "major fraction thereof," where "major fraction" is equivalent to any amount of time in excess of 2 hours); Haines Decl., ¶ 11.

Consequently, UAC asserted that it possessed strong defenses to the derivative waiting time and wage statement penalties, since there existed a "good-faith" dispute that any wages were due, thereby precluding the imposition of waiting time penalties. *See* 8 Cal. Code of Regulations § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); Haines Decl., ¶ 11.  UAC also maintained that Plaintiffs would not be able to prove that all putative class members experienced "injury" as required under Labor Code § 226.  *See, e.g., Villacres v. ABM Industries, Inc.*, 384 Fed.Appx. 626 (9th Cir. 2010) (granting summary judgment for employer on Labor Code § 226 claim based on lack of injury); Haines Decl., ¶ 11.  And because Plaintiffs' claim for civil penalties under PAGA was wholly derivative of the underlying minimum, overtime, and meal and rest period claims, UAC asserted that the PAGA claims would rise or fall with such claims. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General

9

Act is wholly dependent upon her other claims.  Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim."); Haines Decl., ¶ 11.

Despite UAC's defenses, however, Plaintiffs secured a substantial recovery for the Settlement Classes.  This factor therefore supports final approval.  Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal quotations omitted).

### 2.   Risk, Expense, Complexity, and Duration of Further Litigation.

This factor, too, supports final approval because although the parties had engaged in a significant amount of investigation, legal research and analysis, informal discovery, and class-wide data analysis, the parties had not yet completed formal written discovery. *See* Haines Decl., ¶ 13.  Plaintiffs intended to depose UAC's FRCP 30(b)(6) witnesses on all topics related to UAC's policies for provision of incentive pay to non-exempt employees, calculation of the regular rate of pay, timekeeping practices, and meal and rest period practices.  *Id*.  UAC likewise planned to depose Plaintiffs if mediation was unsuccessful, and move for summary adjudication on all or some of the claims.  *Id*.  Moreover, preparation for class certification and a trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or adverse summary judgment ruling.  *Id*.  As a result, the parties would incur considerably more attorney's fees and costs through trial.  *Id*.  This settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Therefore, this factor supports final approval.

### 3.   Risk of Maintaining Class Action Status.

Plaintiffs had not yet filed their motion for class certification when the parties reached this proposed class-wide resolution.  Had the Court certified any claims, UAC intended to decertify the claims.  Haines Decl., ¶ 13.  Absent settlement, there was a risk that there would not be a certified class at the time of trial.  Thus, this factor, too, supports final approval.

### 4.   Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks.

Plaintiffs predicted that their realistic total recovery for the California Class would be approximately $7,569,311 to $8,194,664, and approximately $1,212,935 for the non-California members of the FLSA Class, after discounting the claims for non-certification and/or outright dismissal. *See* DE No. 31.  The proposed settlement of $4,750,000 (to be divided 80% to the California Settlement Class and 20% to the FLSA Settlement Class) therefore represents a substantial recovery given the litigation risks involved.  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted).  Indeed, as this Court concluded in its preliminary approval order, the amount offered in this settlement "appears fair on its face" and "is a reasonable compromise in light of the uncertainties associated with continued litigation." *See* DE No. 32 at 14, 15.  Thus, final approval is warranted.

Pursuant to the terms of the Settlement, 80% of the Net Settlement Amount ("NSA") was allocated to the California Class, with 10% of this amount being allocated to former employees as consideration for their release of waiting time penalty claims.  The remaining 20% of the NSA was allocated to all members of the FLSA Class, including those members who are also California Class members.

11

1  Pursuant to this division of funds, the average total settlement payment to a

2  member of the California Class who is also a former employee (inclusive of their

3  FLSA Class payment and waiting time penalty payment) is $9,630.28, while a

4  currently employed member of the California Class will receive an average of

5  $7,945.38.  *See* Declaration of Ani Shirinian ("Shirinian Decl."), ¶ 22.  Members

6  of the FLSA Class who are not also members of the California Class will receive

7  an average payment of $940.61.  *Id*.  This division of funds fairly and accurately

8  reflects the disparity in projected exposure between the California and non-

9  California members of the Settlement Classes.  Because the 20% of the NSA

10  allocated to the FLSA Class is allocated to the 377 California and 397 non-

11  California members collectively, approximately 10.3% of the NSA was allocated

12  to the non-California class members (397/774 * 20%).  As noted above and in

13  Plaintiffs' motion for preliminary approval (*see* DE No. 31), the projected

14  exposure for all California claims was between $7,569,311 and $8,194,664, while

15  the projected exposure for non-California claims only was approximately

16  $1,212,935, or approximately 12% of the total exposure.  Therefore, the NSA was

17  reasonably divided between the Settlement Classes, and the ratio between the

18  average payment of $8,757.56 for California Class members and $940.61 for non-

19  California FLSA Class members reflects the disparity in exposure.

20      These average settlement payment amounts significantly exceed payments in

21  similar wage and hour class action settlements involving similar-wage workers.

22  *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-

23  9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of

24  proposed class action settlement where average recovery to Settlement Class

25  members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No.

26  CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of

27  class action settlement based on average settlement class member recovery of

28  $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx)

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

(C.D. Cal. April 16, 2012) (granting final approval of settlement where average Settlement Class member recovery was $561.58); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees yielded maximum settlement payment of $922.29 and average settlement payment of $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).  Thus, this factor weighs in favor of final approval.

### 5.    Discovery Completed and the Status of Proceedings.

As detailed above in Section II, *supra*, and in Plaintiffs' Motion for Preliminary Approval, the parties engaged in a significant amount of investigation and informal discovery throughout the course of this litigation, up to and through the date of the parties' second mediation.  Thus, this factor also supports final approval.

### 6.    The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiffs are represented by competent and experienced wage and hour class action counsel who pressed Plaintiffs' claims forward against a large employer who retained Jackson Lewis LLP, one of the largest employment-side law firms in the United States. *See* Baltodano Decl., ¶¶ 2-10; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 2-8; Hollis Decl., ¶ 1-4.  As the Court noted in its June 16, 2014 Order, "Counsel all have considerable experience handling employment class action litigation."  DE No. 32 at 9.  This factor therefore strongly supports final approval. *See, e.g., Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most likely acquainted with the facts of the underlying litigation.").

### 7.   **The Reaction of the Class Members to the Proposed Settlement.**

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *See National Rural Tele. Coop., supra*, 221 F.R.D. at 529.  Here, the response to the Settlement has been overwhelmingly positive.  Notably, not a single class member filed an objection to the proposed settlement after notice was provided to the 774 members of the Settlement Classes informing them about the terms of the proposed settlement, their estimated individual settlement payout and rights under the settlement, the amounts sought by Class Counsel in attorneys' fees and costs, and the amount sought by the Class Representatives as enhancement awards. Shirinian Decl., ¶ 18.  Moreover, over 77% of the members of the California Class filed claims, and claimed more than 90% of the portion of the NSA allocated to the California Class, a rate which exceeds those typically

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

found in wage and hour class action settlements. *See, e.g., Barcia v. Contain-A-Way, Inc.*, Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5 (S.D. Cal. Mar. 6, 2009) (granting final approval of California class with 20% claims rate); *Rodriguez v. D.M. Camp & Sons*, Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4 (E.D. Cal. May 15, 2013) (granting final approval of California class with 15% claims rate); Shirinian Decl., ¶¶ 19 & 21.   Additionally, only 3 of the 377 California Class members elected to opt-out of this settlement (less than 0.7%).  Shirinian Decl., ¶ 13.

   With respect to the FLSA Class, more than 49% of the members of the FLSA Class affirmatively opted-in to the Settlement by submitting a consent to join settlement/claim form, and claimed more than 58% of the portion of the NSA allocated to the FLSA Class.  Shirinian Decl., ¶¶ 19 & 20.  This rate significantly exceeds rates typically found in similar nationwide FLSA settlements.  *See, e.g., Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 266 (D. Conn. 2002) (7.8% opt-in rate for FLSA class); *Jankowski v. Castaldi,* Case No. 01CV0164 (SJF) (KAM), 2006 WL 118973 at *2 (E.D. N.Y. January 13, 2006) (8.9% opt-in rate for FLSA class). Only those FLSA settlement class members who filed a consent to join settlement/claim form will release any claims under this settlement. *See Shea v. Ryla Teleservices*, Case No. 1:11-cv-0626-AWI-BAM, 2012 WL 4210291 at *3 (E.D. Cal. September 18, 2012) ("As this case is being settled as an FLSA collective action, the only plaintiffs covered by the settlement will have affirmatively decided to participate in the case. Those who do not opt-in will not be releasing any potential claims against Defendant.").   Thus, this factor supports final settlement approval.

## IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED.

   In its June 16, 2014 order granting preliminary approval, this Court certified the settlement classes, as defined in Section I, *supra*, for settlement purposes only.

*See* DE No. 32 at 6-10.  The Court found that the California Class met the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, and satisfied the Rule 23(b)(3) requirements of predominance and superiority.  *Id* at 10. Because circumstances have not changed, and for the reasons set forth in his motion for preliminary approval (*See* DE No. 31), Plaintiffs request that the Court finally certify the California Class for settlement purposes under Rule 23(e).  *See Schiller, supra*, 2012 WL 2117001 at *8 ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

Additionally, this Court conditionally certified the FLSA Class under 29 U.S.C. 206(b).  *See* DE No. 32 at 11-12.  While the Court found that Plaintiffs had adequately demonstrated that the members of the FLSA Class were subject to similar timekeeping and payroll practices, the Court requested additional briefing addressing how members of the FLSA Class were "similarly situated."  *Id*. As an initial matter, Plaintiffs note that all members of the FLSA Class worked as hourly, non-exempt employees for an identical employer, UAC.  Haines Decl., ¶ 10. Additionally, Plaintiffs submit that all members of the FLSA Class, both inside and outside California, were subject to an identical miscalculation of the regular rate of pay as a result of UAC's failure to include various forms of non-discretionary bonuses and incentive payments in their payroll calculations.  *Id*.  Although UAC raised the argument in defense of class certification that the timekeeping practices were not uniform across all UAC locations, as the Court has correctly noted, UAC has submitted no evidence to this effect, nor is it opposing certification of the FLSA Class.  DE No. 32 at 11, FN5; Haines Decl., ¶ 10.  Indeed, Plaintiffs' analysis of comparable samples of timekeeping records for both the California and non-California class members revealed that all hourly employees had been deprived of payment for all hours worked due to UAC's timekeeping practices. Haines Decl., ¶ 10.  While the precise method of the alleged time shaving may

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

have differed between facilities, the resultant injury was indisputably the same.  *Id.*
Therefore, Plaintiffs submit that the members of the FLSA Class are similarly
situated and the Court should finally certify the FLSA Class for settlement
purposes.

## V.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS.

Due process requires that notice be provided to class members by the best
reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156,
173 (1974).  Notice is satisfactory if it "generally describes the terms of the
settlement in sufficient detail to alert those with adverse viewpoints to investigate
and to come forward and be heard." *See Churchhill Village, L.L.C. v. General
Electric*, 361 F.3d 566, 575 (9th Cir. 2004).   Here, the parties engaged CPT
Group, Inc. ("CPT"), an experienced third-party settlement administrator, to mail
the Class Notice and related forms to settlement class members. *See* Shirinian
Decl., ¶¶ 1-2.

The concurrently-filed declaration of Ani Shirinian details the settlement
administration efforts of CPT.  For example, on July 29, 2014, and via First Class
mail, CPT mailed notice packets to 774 members of the Settlement Classes. *See*
Shirinian Decl., ¶¶ 4-7.  The mailing addresses contained in the Class List were
processed and updated using the National Change of Address Database ("NCOA")
maintained by the U.S. Postal Service. *See* Shirinian Decl., ¶ 5.  The NCOA
contains requested changes of address filed with the U.S. Postal Service. *Id.*  In the
event that any individual had filed a U.S. Postal Service change of address request,
the address listed with the NCOA was utilized in connection with the mailing of
the Notice Packet.  *Id.*

The notice contained information and explanations about the claims in the
litigation and the terms of the settlement, the rights and release of claims under the
settlement, the right of California Class members to file a claim form, and the right

17

of FLSA Class members to opt-in, the right to object to the settlement, the right of California Class members to opt-out of the settlement, and the calculation of settlement shares, including estimated individual settlement payment amounts.  *See* Shirinian Decl., ¶ 7, and Ex. A.  The notice also informed the Settlement Classes of the September 27, 2014 deadline for filing a consent to join/claim form and objecting to the settlement or opting out, and informed them of the date, time, and location of the November 10, 2014, final approval hearing. *Id*.

As of October 9, 2014, five notice packets had been returned by the post office. Shirinian Decl., ¶ 9.  Fourteen notice packets were re-mailed to an updated address, either as a result of an updated address being located or at the request of the Class Member. *Id*. at ¶ 10.  Ultimately, no notice packets were deemed undeliverable.  *Id*. at ¶ 11. Three-hundred and eighty-one members of the Settlement Classes submitted timely claims. *See* Shirinain Decl., at ¶ 19.  Not a single Settlement Class member objected to the settlement, and only 3 California Class members opted out of the settlement (approximately .07%). *See* Shirinian Decl., ¶¶ 13 & 18.  For these reasons, Plaintiffs submit that the notice procedure implemented for this settlement meets the requirements of Due Process, and requests that the Court approve the payment of $20,000 to CPT for administering the settlement. *See* Shirinian Decl., ¶ 24.

## VI.   **CONCLUSION.**

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this motion and enter the order granting final approval.

Dated:  October 10, 2014

Respectfully submitted,

BOREN, OSHER & LUFTMAN LLP

By:   _/s/Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Classes and Aggrieved Employee

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT